UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

```
******************************************************************************
                                    *
MUELLER PALLETS, LLC,               *       CIV. 09-4016
                                    *
        Plaintiff,                  *
                                    *
vs.                                 *
                                    *       ORDER
VERMEER MANUFACTURING               *
COMPANY,                            *
                                    *
        Defendant.                  *
                                    *
******************************************************************************
```

Pending are Mueller's motion to compel discovery and Vermeer's motion to quash deposition notices. The well written briefs of the parties crystallized the issues. Mueller moves to compel additional responses to Mueller's Interrogatories 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 21, 24 and 26 and Requests for Production of Documents 5, 6, 8, 9, 11 and 12.[1] Vermeer moves for a Protective Order to prevent the depositions of Vermeer's In-House Counsel, Chris Shepperd, and Vermeer's President and Chief Executive Officer, Mary Vermeer Andringa.[2]

## BACKGROUND

After dismissal of Counts 3, 4, and 6,[3] Counts 1, 2, and 5 remain:[4]

- count 1 for breach of contract for delivering a grinder that was not suitable for its purpose;

---

[1] Doc. 53.

[2] Doc. 62.

[3] Docs. 46 & 47.

[4] Doc. 5.

- count 2 for breach of contract to repair and extend the warranty on the tub grinder;

- count 5 for breach of express and implied warranties of fitness for a particular purpose and merchantability.

Vermeer asserts that Count 2 is not pertinent to this discovery dispute.[5] Vermeer asserts design defect claims are not in the lawsuit and therefore not pertinent.[6] Vermeer argues the only warranty is Vermeer's express warranty for quality and workmanship:[7]

> . . . free from **defects in material and workmanship**, under normal use and service for one (1) full year after initial purchase/retail sale or 1000 operating hours, whichever occurs first. . . .

According to Vermeer, all other warranties are disclaimed—meaning there are no implied warranties for merchantability or fitness for a particular purpose.[8] Therefore, Vermeer concludes the only remaining count is 5, and only that part of count 5 which alleges breach of express warranty.

Mueller lumps Vermeer's objections into three groups:[9]

(1) the requests for information regarding testing and accidents involving grinders with a similar duplex drum platform are not "relevant" to Mueller's breach of warranty claims;

(2) the requests made by Mueller are "overly broad" and "vague and ambiguous;" and

(3) the information sought by Mueller is confidential.

---

[5]Doc. 62, p. 5.

[6]Doc. 61, p. 2.

[7]Doc. 62, p. 8 & Doc. 60, ex B (bold applied for emphasis).

[8]Doc. 61, p. 9.

[9]Doc. 54, p. 2.

Mueller argues[10]

> To prevail on its breach of warranty claim, Mueller must demonstrate that the tub grinder was defective at the time it left Vermeer's control. Mueller's may prove the existence of this defect through either direct or circumstantial evidence. As noted in *Drier v. Perfection, Inc.*:
>
>> A product is defective when it fails to perform reasonably and safely the function for which it was intended. No specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the problem was caused by a defect.

Therefore according to Mueller, Vermeer's objections based on relevance should be denied because the requests for information about other tests and accidents involving similar grinders are relevant to Mueller's breach of warranty claims. Mueller argues Vermeer's objections based on burden should be denied because Vermeer carries the burden to demonstrate overly broad or burdensome requests, but Vermeer has waived the objection by its failure to carry the burden of proof.[11] Both parties agree a protective order can satisfactorily address Vermeer's concerns about the third category of objections— confidential information.[12] Mueller also argues that even if the only warranty which survives is express warranty, Mueller can still try to prove the express warranty failed of its essential purpose.[13]

To support its motion for protective order Vermeer asserts:[14]

Plaintiff intends to take the deposition of eight Vermeer witnesses identified in discovery responses, including Michael Byram, Mike Van Zee, Duke Reynolds, Jay Sarver, John Gardner, Chris Sievers, Ward Meldrum, and Duane Harthoom. In

---

[10]Doc. 54, p. 3, citing *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 504 (S.D. 1977) and *Schmaltz v. Nissen*, 431 N.W.2d 657, 663 (S.D. 1988).

[11]Doc. 54, p. 4.

[12]Doc. 54, p. 4 and Doc. 61, p. 5, fn 2.

[13]Doc. 83, p. 2, citing SDCL 57A-2-719(2).

[14]Doc. 62, p. 3.

3

> addition to these eight individual depositions, plaintiff has also noticed the corporate deposition of Vermeer Corporation on numerous topics. Plaintiff also seeks to take the depositions of Mary Vermeer Andringa, the President and Chief Executive Officer(CEO) of Vermeer, and Chris Shepperd, in-house Corporate Counsel to Vermeer.
>
> Mr. Shepperd is the in-house Corporate Counsel who is managing the defense of this lawsuit and provides legal advice to Vermeer with respect to the defense of this case.

Vermeer argues Mueller can get the same information from other witnesses whose depositions are already noticed, that Andringa has no personal knowledge of pertinent facts, and that Shepperd's second hand information is protected by the work product doctrine and the attorney client privilege.[15]

## DECISION

**Elements of Proof of Breach of Express Warranty.**

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."[16]

In order to recover money damages for a breach of express warranty one must prove:

(1)  an affirmation of fact or promise made by the seller to the buyer relating to the goods;

(2)  such affirmation of fact or promise became a part of the basis of the bargain;

(3)  that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises;

(4)  that the goods sold by the seller failed to comply with the promises or affirmations of fact made by the seller;

(5)  that the buyer, because of such failure, was financially injured; and

---

[15] Doc. 62, p.4.

[16] SDCL 57A-2-313.

(6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer.[17]

No specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the problem was caused by a defect.[18] Although the South Dakota legislature abrogated the rule of *Hanson v. Funk Seeds*,[19] it is worthy of observation that the South Dakota Supreme Court in *Hanson* said about express warranty:[20]

> Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence demonstrates, either directly *or by permissible inference*, that the corn was defective in its performance or function or that it otherwise failed to conform to the warranty.
>
> This was represented to be high-yielding corn; it was not; evidence presented by appellee reflected that the corn was properly planted and cultivated; appellee presented *sufficient circumstantial evidence, under the rule established in Drier, to prima facie establish a cause of action for breach of warranty, express* or implied.

This observation is made because the quoted language from *Hanson* is consistent with other South Dakota law about express warranty which is still in effect.[21] While the ruling of *Hanson* was abrogated by the South Dakota legislature, it is believed the quoted language from *Hanson* accurately describes the state of existing law in South Dakota about proof of breach of express warranty.

---

[17]*Virchow v. University Homes, Inc*., 699 N.W.2d 499, 503-505 (S.D. 2005) citing *Schmaltz v. Nissen,* 431 N.W.2d 657, 660-61 (S.D.1988) (quoting *Swenson v. Chevron Chemical Co.,* 89 S.D. 497, 234 N.W.2d 38 (1975)).

[18]*Drier v. Perfection, Inc*., 259 N.W.2d 496, 504 (S.D. 1977).

[19] Chapter 410 of the 1986 Session Laws. This legislative enactment states: "BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA: The ruling in Decision II of Hanson v. Funk Seeds International, 373 N.W.2d 30 (S.D. 1985) is hereby abrogated."

[20]*Hanson v. Funk Seeds Int'l*, 373 N.W.2d 30, 33-34 (S.D.1985) (italics added for emphasis).

[21]See the cases cited in footnote 16 & 17, i.e. *Drier, Swenson, Smaltz, and Virchow*.

The Eighth Circuit Court of Appeals has said:[22]

[there is] no black letter rule of law regarding discovery of predecessor models in products liability cases, other than to state that discovery of similar, if not identical, models is generally permitted. Rather, the courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities.

1.   Mueller's Motion to Compel.

   **Interrogatory 7.**

   Mueller asked Vermeer to identify all grinders manufactured by it that have a grinding platform that is the same or similar to the grinding platform used by the subject tub grinder. Vermeer's assertion that product design is not involved in the lawsuit has not fallen on deaf ears. But, to the extent Mueller can prove defective workmanship or defective materials by circumstantial evidence of similar defects in other similar products, the law allows it to do so. Vermeer's objection is DENIED. Mueller's motion to compel is GRANTED as to Interrogatory 7.

   **Interrogatory 8.**

   Mueller asked Vermeer to identify safety codes or industry, governmental or engineering standards consulted in the design of the tub grinder and electric grinder. By its very words this interrogatory goes to the design of the grinder, not to workmanship or quality of materials. Vermeer argues that design considerations do not tend to prove defective workmanship or defective materials. A defect in material is a defect in quality. A defect in workmanship is a defect in the way some part of the machine is constructed. Design, on the contrary, involves the overall plan of construction and operation.[23] Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

---

[22]*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 -381 (8th Cir. 1992) (internal citation and quotation marks omitted.)

[23]*Lombard Corp. v. Quality Aluminum Products Co.*, 261 F.2d 336, 338-339 (6th Cir. 1958).

**Interrogatory 9.**

Mueller asked Vermeer to identify whether any investigations were undertaken, computations made, tests performed or designs implemented to fortify the particular component parts of the tub grinder that would be subject to fractures and stress. The thrust of this interrogatory appears directed at design, but could implicate workmanship or materials as well. Vermeer must first respond whether quality of workmanship or materials were involved. If not, Vermeer need not answer further. If so, Vermeer must answer the interrogatory as posed. To this extent the objection and motion to compel are both GRANTED IN PART and DENIED IN PART.

**Interrogatory 10**.

Mueller asked Vermeer to identify any factors or features that were incorporated into the TG5000 or into any grinder with the same grinding platform to address the operating issues described in Mueller's Complaint, which include severe and abnormal vibrations, defective display screen, holes in cylinders, broken latches, and cracking of defective metal components. The thrust of this interrogatory appears directed at design, but could implicate workmanship or materials as well. Vermeer must first respond whether quality of workmanship or materials were involved. If not, Vermeer need not answer further. If so, Vermeer must answer the interrogatory as posed. To this extent the objection and motion to compel are both GRANTED IN PART and DENIED IN PART.

**Interrogatory 11.**

Mueller asked Vermeer to identify information regarding any testing that it performed to determine whether the safety factors and features adopted for the design of the tub grinder were adequate. This interrogatory addresses design, but not quality of workmanship or materials. Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

**Interrogatory 12.**

Mueller asked Vermeer to identify what factors or features were incorporated into the design of the tub grinder to minimize vibration. This interrogatory addresses design, but not quality of workmanship or materials. Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

**Interrogatories 13 & 16**.

Venneer was asked to identify whether it conducted any tests to determine whether the factors and features identified in its response to Interrogatory 12 to reduce vibration were adequate. These interrogatories address design, but not quality of workmanship or materials. Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

**Interrogatory 14.**

Mueller addressed Interrogatory 14 in its brief even though interrogatory 14 is not identified in Mueller's motion to compel. Mueller asked Vermeer to provide information regarding any design or manufacturing changes to any grinder as a result of information obtained from any complaint, investigation, computation or test conducted to address any issues similar to those identified in Mueller's Complaint. Mueller argues this circumstantial evidence could tend to prove a design or manufacturing defect. Vermeer responded with argument about Interrogatory 14. The thrust of this interrogatory appears directed at design, but could implicate workmanship or materials as well. Mueller's reference to design is disregarded, but Mueller's reference to "manufacturing defect" includes quality of workmanship and materials. Vermeer must first respond whether quality of workmanship or materials were involved. If not, Vermeer need not answer further. If so, Vermeer must answer the interrogatory as posed. To this extent the objection and motion to compel are both GRANTED IN PART and DENIED IN PART.

**Interrogatory 15.**

Mueller asked Vermeer to disclose whether it fabricates all of the component parts of the grinding platforms. Subparagraph (c) specifically asks Vermeer to identify any communication with the component part manufacturer regarding the types of operating issues identified in Mueller's complaint. Vermeer acknowledged the interrogatory encompasses manufacturing information and asserted that it is in the process of responding with manufacturing information.[24] Vermeer must first respond whether quality of workmanship or materials were involved. If not, Vermeer need not answer further. If so, Vermeer must answer the interrogatory as posed. To this extent the objection and motion to compel are both GRANTED IN PART and DENIED IN PART.

**Interrogatory 17.**

Mueller asked Vermeer to disclose whether it has ever been involved in any litigation regarding the design, manufacture, and/or operation of any tub grinder or electric grinder of the same or similar model of the subject tub grinder or any other grinder with the same grinder mill/platform as the subject grinder. Vermeer must first respond whether quality of workmanship or materials were involved. If not, Vermeer need not answer further. If so, Vermeer must answer the interrogatory as posed. To this extent the objection and motion to compel are both GRANTED IN PART and DENIED IN PART.

**Interrogatory 21.**

Mueller asked Vermeer to identify each person known to it who owns or who is in possession of a tub grinder, electric grinder, or other grinder identified in Vermeer's response to Interrogatory 7. Vermeer's objection is DENIED. Mueller's motion to compel is GRANTED.

---

[24]Doc. 61, p. 13, fn 4.

**Interrogatory 24.**

Mueller asked Vermeer to identify any reports or complaints from any source similar to those alleged in Mueller's Complaint regarding any grinder with similar or identical grinding platforms or mills. This information could tend to prove defective material or workmanship. It could also tend to prove the express warranty failed of its essential purpose. The motion to compel is GRANTED.

**Interrogatory 26.**

Mueller asked Vermeer to disclose whether it had any knowledge of the existence of any alleged defect or defective condition of a same or similar type as alleged by Mueller's Complaint prior to Mueller's purchase of the tub grinder. This information could tend to prove defective material or workmanship. It could also tend to prove the express warranty failed of its essential purpose. The motion to compel is GRANTED.

**Request for Production 5.**

Mueller requests Vermeer to produce a copy of all minutes of the meetings from any committee or group that was involved with the preparation, specifications, and design of the tub and electric grinders. This request addresses design, but not quality of workmanship or materials. Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

**Request for Production 6**.

This request is tied to Interrogatory 8. The request is to produce copies of any regulatory standards identified in Interrogatory 8. Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

**Request for Production 9.**

This request is tied to Interrogatory 24. The request is to produce any reports or complaints from any source similar to those alleged in Mueller's Complaint regarding any grinder with similar

or identical grinding platforms or mills. This information could tend to prove defective material or workmanship. It could also tend to prove the express warranty failed of its essential purpose. The motion to compel is GRANTED.

**Requests for Production 11& 12.**

Request 11 is to produce all drawings, blueprints, engineering plans and other design documents for the tub and electric grinders and the grinding platform or mill. Request 12 is to produce all specifications including durability and safety specifications, for the grinding platforms or mills for all of Vermeer's grinders. In addition to relevancy, this request is too broad. Vermeer's objection is GRANTED. Mueller's motion to compel is DENIED.

2. Vermeer's Motion for Protective Order**.**

Vermeer asks for an order protecting its President and CEO, Mary Vermeer Andringa, and its in house counsel, Chris Shepperd, from being deposed. The controlling principles about deposing in house counsel Shepperd were identified in *Barton*:[25]

> Federal Rule of Civil Procedure 26(b)(1) permits discovery into any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . . There are two well-known exceptions to the liberal discovery rules that are relevant to this discovery dispute: the attorney-client privilege and the work-product doctrine. . . . The party seeking to invoke the attorney-client privilege bears the burden of establishing all of the privilege's essential elements. . . . Nevertheless, simply including an attorney in a communication will not render an otherwise discoverable document protected by the privilege. The courts will not permit the corporation to merely funnel papers through the attorney in order to assert the privilege. . . . E-mails, with sometimes different and multiple recipients and authors, add complexity to the analysis of the attorney-client privilege. . . . . Email strands can span over several days, and they may have many different recipients and authors. Moreover, some e-mails in which counsel are involved may contain factual information, which is not protected by the

---

[25]*Barton v. Zimmer, Inc.,* 2008 WL 80647, 3 (N.D.Ind.). Internal citations and quotation marks omitted except for one to show that the quotation within the parentheses is from a case cited by the author of the *Barton* opinion.

privilege, while others within the same strand may contain exclusively legal advice. . . .("It is beyond question that the attorney-client privilege does not preclude the discovery of factual information. Only the communications and advice given are privileged; the underlying facts communicated are discoverable if they are otherwise the proper subject of discovery."). . . . The work-product doctrine is a qualified privilege and is "distinct from and broader than the attorney-client privilege. . . . Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . .

But an important competing principle was described in *Hilton-Rorar*:[26]

> Although the assistance of others is often indispensable to the attorney's work, the attorney-client privilege only exists and extends to communications to an attorney's representative if the communication was made (1) in confidence and (2) for the purpose of obtaining legal advice.[27] . . .

Vermeer has represented that Chris Shepperd is actively involved in the defense of this case for Vermeer so that all of his information is protected by attorney client privilege or by the work product doctrine. Mueller counters that Shepperd verified the truth of the answers to interrogatories. The discovery responses, both original and supplemental, were signed by outside counsel representing Vermeer and the truth of the responses was verified in both instances by in house counsel, Chris Shepperd. Vermeer's motion for protective order to prevent the deposition of in house counsel Chris Shepperd is GRANTED. He is actively involved in the defense of this litigation. His information was gathered in anticipation of or as a result of the litigation. He has provided legal counsel to Vermeer about this lawsuit. Mueller can secure the discoverable facts from the eight Vermeer witness depositions and the Rule 30(b)(6) corporate deposition which have been noticed. Shepperd is protected from being deposed by the work product doctrine as well as the attorney client privilege.

---

[26] *Hilton-Rorar v. State & Fed. Commc'ns Inc.*, 2010 WL 1486916, (N.D. Ohio).

[27] *Id.* at *4.

Vermeer represents that its President and CEO Andringa does not have first hand knowledge about any of the facts relating to this litigation. Mueller can secure all of the discoverable facts from the eight Vermeer witness depositions and the Rule 30(b)(6) corporate deposition which have been noticed, together with written discovery. If Mueller still needs to depose Mary Vermeer Andringa following those depositions, Mueller can ask for an Order allowing Andringa to be deposed provided Mueller can demonstrate sufficient justification for doing so. Vermeer's motion for a protective order to prevent President and CEO Mary Vermeer Andringa from being deposed is GRANTED.

It is ORDERED that:

1. Mueller's motion to compel[28] is GRANTED as to Interrogatories 7, 21, 24, & 26.

2. Mueller's motion to compel is DENIED as to Interrogatories 8, 11, 12, 13, &16.

3. Mueller's motion to compel is GRANTED IN PART and DENIED IN PART as to Interrogatories 9, 10, 14, 15, & 17.

4. Mueller's motion to compel is GRANTED as to Request for Production 9.

5. Mueller's motion to compel is DENIED as to Requests for Production 5, 6, 11 & 12.

6. Vermeer's motion for protective order is GRANTED. Mueller's notices to take depositions of in house counsel Chris Shepperd and President and CEO Mary Vermeer Andringa are quashed.

Dated October 12, 2010.

BY THE COURT:

s/John E. Simko

John E. Simko
United States Magistrate Judge

---

[28]Doc. 53.